Peterson v. Katten Muchin Mr. Joyce Good morning your honor my name is Ed Joyce I represent the trustee for the offshore Lancelot fund. The fundamental problem with the district court's opinion dismissing the trustee's malpractice case is the fact that the district court ignored this court's admonition in the third paragraph of its decision in Peterson v. Winston is strong that the pleading stage the district court quote I'm sorry district court must accept the allegations that quote Bell honestly even if incompetently thought Petter's business was legitimate. The district court fundamentally ignored that comment from this district court which just expresses the law that's been the law in this district for forever. The district court failed to accept the comprehensive and well-pled facts that Bell believed Petter's business was legitimate and that Bell did not believe he was accepting a material risk that the Thousand Lakes notes were not secured by Costco accounts receivable and the inventory in Costco warehouses. The district court stated that Bell developed a business plan which accepted and embraced the risk of no collateral for higher interest payments that's a fact that's contained nowhere in the complaint. It is not an inference that could be drawn from the facts in the complaint. It was never made by Catton and the obvious reason Catton never made that argument is if those facts were true then Catton would have prepared a fraudulent prospectus for delivery to the investors because the prospectus it prepared said we're going to only purchase secured notes. We're going to have accounts receivable, we're going to have inventory. It also said that there would be monitoring of this investment. So Catton couldn't have made the argument and the court never should have developed it on its own. In 2003, Bell went to see his attorneys at Catton Newton and as an aside the facts have shown that anytime Bell ever had a concern about anything he went to see his attorneys whether it was Catton or Winston Estrand. So he went to see his attorneys in 2003 and during the course of a conversation Mr. Nissen asked Mr. Bell why are you getting such a high interest return and Bell said well I'm getting a high interest return because Mr. Petters will not let me contact Costco, he will not let me look at the inventory. Well Nissen knowing that should have said well you can't accept that restriction. We've told the investors, we've told the board of directors, we've told Mr. DeMaio that in fact you're only buying secured notes and you're monitoring them. So you could not accept that restriction and further since Bell believed in the legitimacy and honesty of Mr. Petters the lawyer should have said look, you can't believe in this guy. I mean it's other people's money, it's not your money. You've got to be more diligent in protecting these people. So they should have said to Bell why do you believe in Mr. Petters? Now Bell laid out, I think there's 15 different reasons laid out in the complaint why he believed in Petters and they might have been enough for Bell but they should not have been enough for an independent attorney whose engagement was to ensure that his client, the fund, only purchased secured promissory notes. That was the engagement. So you have to consider the predilection of your client when you're giving advice and if your client is predisposed to not understand the risk because of his belief in the honesty of the counterparty, you've got to essentially shake him with the reality of what's going on here. And what Illinois decisions established that obligation? If I understand the facts correctly, Bell represents Decathlon and the investors are also told that whether these transactions occurred was being verified. The verification was by looking at the documents. The risk was that the documents were forged or had been forged and that McLadry and Pullen hadn't caught on to the forgery. But Your Honor, I don't... Those were the risks. What rule of Illinois law says that an attorney has to tell the client that that means of checking for forgery is legally inadequate and you must do something different? You know, I'd hate to give you a generalized answer because I know that's not what you're looking for. Indeed, that's not what I'm looking for. But I can't identify a single Illinois case with facts that are remotely similar to this. But what I can point out to you is in the Clifford case... I'm not even worried about facts similar. What you're saying is that it's an attorney's unvarying obligation to require the client to use the best means of detecting fraud rather than a means of detecting fraud. Well, no, I'm not really saying that because the attorney here already decided what he was going to say in the perspective to the investors. And they said, we're only going to buy secured notes. And that was their engagement to make sure that was happening. So they had independent... And they had a means of detecting whether they were buying secured notes. It was to inspect the paper. There turns out to be a better means, and that's to inspect the paper and talk to the obligor on the paper. The question I'm asking is, where do we find in Illinois law an obligation that the law firm must tell the client to use the best means rather than a means? I think you're correct. There's no case that says you must use the best means. But I believe there's a case that says you can't sit by idly while you see your client doing nothing because of a belief... No, the client was doing something. The client, Bell and the funds, were inspecting the paper. If there was no checking, you would have a much better claim. But they were checking by inspecting the paper. The problem is the paper might have been forged. Now, of course, even if Costco had been called, there was a risk that Petters had a plant at Costco to verify what was going on, to verify what was going on. So it doesn't completely eliminate the possibility of fraud. That's one of the lessons of the National Student Marketing Fraud, where there was a plant. Correct. But in this case... But here, we aren't dealing with no means of checking. We're dealing with a potentially inferior means of checking. But this is a means of checking that Bell told the auditors in response to their question, is there a possibility of fraud here? He said, oh sure, the possibility is the documents are forgeries. Now, is that something that an accountant who specializes in business advice wouldn't immediately say? Sir, you're accepting a document, assuming it is correct, and if it's not... Yeah, well, we know from what McLadry and Pullen did that it's something an accountant wouldn't immediately say, at least not this accountant. Well, this accountant should have said it. The ARCPA rules require it to look at these documents. The fact that their program didn't require them to do it is the negligence we're complaining about. But here, when it comes to Katten-Muechen, Bell told them everything he knew. He responded to every question they ever had, and according to the district court, they sat there with their arms folded and said, you know, Bell's made a business decision to accept risk for a higher interest rate. Well, that's a business decision, so I'm not going to say anything. That just cannot be the obligation of a transactional lawyer, to sit there, knowing his client's got a predilection, knowing he's accepting a business risk that makes no sense, considering the business plan disclosed to the investors, and say nothing. At the very least, you've got to say, this is something you can't do, it's something you shouldn't do, and maybe, in response to your Honor's question, maybe there's something short of contacting Costco, maybe there's something short of looking at the inventory. Let's explore that. But you can't just sit there and say nothing, and that's what happened here. And it's not just this lawyer that said nothing. Bell never was warned of a risk by any accountant, any lawyer, he even, you know, it just, Bell wasn't real bright, but he was entitled to get competent advice from competent, well-respected professionals. And then the district court, again, crossed the line, and it said it's hard to see where Bell could have been under any false impression of safety. Well, you know, the facts may develop through discovery, and that might be an appropriate conclusion at summary judgment or a trial, but it's not an appropriate position to take on a motion to dismiss. And let's go for a second to 2007. Again, here's Mr. Bell. He's not hiding the facts from his accountants or his lawyers. He finds out that Thousand Lakes has not paid notes in November 07 and December 07, so they're on default. And he goes to Kat and he says, now what should I do? You know, I've purchased some insurance on this, should I make a claim against the insurance company? Oh, by the way, you know I've got a guarantee from Petters because you prepared it. Should I sue Petters on the guarantee? What do you think I should do? There's not a problem here. We'll just amend the loan agreement to extend the maturity, and then all of a sudden you haven't got a problem. That can't be considered competent advice. Here is a red flag. They know their client is not calling Costco, they know their client is not looking at inventory, they know their client is not getting paid, and they don't say to him, you've got to do something here, okay? You've got to do something. And at this point, you've got to call Costco. And if Costco won't talk to you because you're not the customer, you've got to go to Petters and sit there while Petters dials up Costco and listen to the conversation. Then you've got to ask Costco for some kind of confirmation on the accounts receivable, and you've got to look at the inventory. So the decision from the district court is just totally inconsistent with what this court said in Winston and Strawn. We think it should be reversed, and lest you have questions, I'm prepared to sit down. Thank you, Mr. Joyce. Thank you. Thank you. Thank you. Mr. John. Yeah. It pleases the court, Peter John, on behalf of Kat and Lucien, the law firm. Let me start this way. The issue in this case is, is there a legal duty on behalf of Kat and Lucien to have done something with respect to the fund's decision to make a business transaction with respect to the Petters investment program? And what type of negotiation on the terms of price, interest rate, et cetera, were those business negotiations? So the question becomes, is there a duty on behalf of a law firm to provide business advice to a client when they're hired as a lawyer? I'm not sure about this whole classification between legal advice and business advice. How does one decide what box something goes in where the lawyer is hired for transaction planning? You can't plan any transaction or decide what safeguards to put in the documents without thinking about the business. So if you really say there's no liability for not giving business advice, what you're saying is that lawyers hired for transaction planning just can't be liable. Well, I'm just following what the case say, and let me point out right now, Judge Easterbrook, there is no Illinois case dealing with the issue of that duty concerning business advice. Once you've put it in the business advice box, my problem, just to restate it, is that a transaction's lawyer, the legal aspects of planning a transaction depend on the business aspects. You seem to call business planning any business aspect of the transaction planning, and I can be teased apart. They can be teased apart because a lawyer is hired to give legal advice during a business transaction. But ultimately, when the business decisions are to be made, those are the decisions of the businessman, not the lawyers. The question is really framed more properly, it seems to me, as the scope of the duty of care, and I'm not sure that can be resolved on the pleadings. I mean, usually, in this context, it requires expert testimony on the scope of the duty of care, and then a decision is made about whether there's been a breach, but this case was resolved on the pleadings, and I'm just not sure that that's appropriate in these circumstances because of the difficulty in classifying what was within the scope of the And what the scope of its legal representational duties would have been under the circumstances because this was a transactional engagement and not something more discreet like a specific piece of litigation or write this contract, et cetera. Your Honor, the issue of due care is the second piece after the duty issue, and what we challenge on the duty issue. They were hired. I mean, there's a legal fiduciary duty here. They were hired to give a legal duty to the client concerning legal advice. They weren't hired for a discreet contract, for example. We want you to write the original contract here, or we want you to represent us in this litigation. It wasn't that kind of a relationship. It's my understanding it was ongoing with respect to this entire hedge fund. No, you're correct. It wasn't just a single obligation to do a single contract, but the obligation went past the single contract when they were asked to do other legal duties in preparing the hedge fund and also doing the master loan agreement and also doing, as Mr. Joyce indicated, the prospectus, which really was not alleged in this particular amended complaint. But in each one of those duties, there has been no allegation of any malpractice on behalf of Catton. All they're saying is you should have perceived that Mr. Bell did not see that there was a potential risk by not getting direct contact with Costco. And then they say there is a legal duty for Catton Mution to have told him, let's tell you that you should, as a legal duty, go talk to Costco because there is a risk that you are not covering because, as they allege in the amended complaint, the standard in the direct contact with a retailer or other inventory controls. And Bell decided not to do that and then told Catton Mution, here is our contractual plan with Pedder's investment program in order to enter into the contract with them. So Catton was asked to do specific things throughout, correct, set up the hedge fund, do the master loan agreement, and do prospectus and everything else. But just to ask, because this was brought up, there is no Illinois case directly on the issue of a lawyer's requirement to provide business advice. The closest we can come is out of the Northern District of Indiana in the Abrams v. DLA Piper case, which is in this circuit. And in that case, that was specifically the issue that was raised concerning the claim of malpractice against the law firm for not properly giving them business advice. And what the court, so I don't misquote, said, the advice the plaintiff challenged then is not the legal advice provided by the defendant, rather the plaintiff is challenging the defendant's failure to give the debtor business advice, specifically the defendant's failure to advise the debtor against engaging in the AIC sales leaseback transaction and redemption agreement. Now, the Northern District judge on that case referred to this court's Seventh Circuit case in Maxville v. KPMG. In that case, this court said basically the same thing, but it was an accountant's case. And it says, it is not a duty to give the company business advice, such as advice on whether to acquire another company. The knowledge required to give such advice is possessed by the business itself and by business consulting firms as distinct from auditors. Now Cadmucian is not a business consulting firm. Cadmucian is not an auditor. If this court is looking for a duty with respect to business advice concerning this type of case, with respect to this case, it was dismissed on an amended complaint. There was an original complaint, the complaint was then amended, and after the amendment, we moved for summary judge, I mean moved to dismiss. The plaintiff was given the opportunity to then amend, which they decided to stand on the amended complaint, and in standing on the amended complaint, the district court dismissed it and then entered judgment. The next procedure was a Rule 59e motion, which was denied also by the court. Now with respect to the duty issues here and who is responsible for determining the business risk analysis, I point to the complaint here for an important reason. In paragraph 4 of the amended complaint, what it says is that all relevant times, all legitimate business affairs are directed by the Board of Directors, and the 2006 forward, its investments had to be and were approved by Thomas DeMeo, an independent loan acquisition officer. So they had other businessmen involved here besides Mr. Bell with respect to the business decision of how they were going to deal with the Petters Agreement. Secondly, in the amended complaint, I refer to paragraph 13 at the end after A, B, and C. And this is important, again, based on the issue of the business decisions to protect this investment on behalf of the fund. And it alleges, moreover, Bell, on behalf of Lancelot wanted the fund, purchased one, credit insurance to protect against the risk that Costco would not pay Thousand Lakes, and two, inventory insurance to protect against the risk of damage or theft of the inventory. And those investment vehicles were able to go forward and verify with respect to the inventory whether it existed. Now, if there was a failure there, that's where there could be a claim, but not against the lawyers because what they were told, as alleged in the complaint, was that all these protections to verify collateral were in place with respect to the Petters securities. There's also an allegation in the complaint that every single note was paid off through this whole period of time where they contend there was malpractice on the part of Pat Muchen by not telling Bell to go farther in trying to verify the existence of collateral when he agreed not to do it. That's true of every Ponzi scheme. There is a long period when the Ponzi scheme pays everything, and then there's a sudden crunch at the end. The fact that Bernie Madoff paid his creditors for 25 years wasn't dispositive in the end, was it? And he was to take precautions against that. In this case, with a Ponzi scheme in existence, where was the duty for Pat Muchen to take more action than they did other than providing the proper legal advice, and except for this claim of duty, they even allege in the amended complaint that they complied with all of their legal obligations in developing the documents that set forth and protected them on the Petters investment plan. As I said, again, this goes back to whether there's a duty. There is no duty here, and that was the basis. We're not claiming imparted delecto. We are claiming there is no basic duty here. Thank you. Thank you very much. Mr. John, anything further? Mr. Joyce? Very briefly, Brian. Mr. John's argument sort of teed up a response to a question you asked. The gist of the failure here was not necessarily to tell Bell he had to use the best possible way to determine if there was receivables or inventory. The gist of the problem here, just as it was in Nelson Brothers versus Freeborn and Petters, is the failure to tell a man who perceives no risk that there is a risk. Once you explain to him there is a risk, then the process starts of how do we address that risk. Bell conceded that there was a risk. That's where we get into this. Bell knew there was a risk, and Bell believed he was getting a higher rate of return. The question is whether the risk was excessive in relation to the return. Pardon me. I'm sorry to interrupt you. That's a description of the complaint advanced by the district court. Bell never perceived there was a risk. It's alleged he never received that at all. He was able to get slightly higher interest because he couldn't do the things that a normal bank might do. Well, he's not a normal bank. He's not a normal borrower. But the thrust here, the principal problem is he never was told by his lawyers, look, no matter how firmly you believe in this guy, there's a risk. Let's deal with it. We set how we're going to do it in the prospectus, and you didn't do it. Finally, you know, we're criticized for not having sought to amend the complaint a second time. Well, it was not until we sought the opinion that we understood the judge ignored most of the well-pled facts, that he came up with different reasons for supporting the dismissal that were never advanced at all by Catton and aren't supported by the complaint. So we did seek to amend. And yes, there's an extremely high hurdle, but it seems in fairness under the rules, if the first time you're on notice that the court has taken a position that you didn't address is in his opinion, you should get a chance to address the issue, especially if it solves the problem. Thank you. Thank you very much. The case is taken under advisement.